THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCILLE TAGLIERE, | ) |
| *Plaintiff*, | ) |
| | ) No. 22 C 6176 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| HORSESHOE HAMMOND, LLC, | ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lucille Tagliere tripped and fell while visiting Defendant Horseshoe Hammond, LLC's casino in Indiana. Tagliere sued Horseshoe, alleging negligence. (Dkt. 1). Horseshoe moves to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer to the Northern District of Indiana. (Dkt. 13). Since personal jurisdiction is lacking and venue is improper, the Court grants Horseshoe's motion to transfer venue.

## BACKGROUND

On a Rule 12(b)(2) motion to dismiss, the Court "accept[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Tagliere resides in Illinois. (Dkt. 1 ¶ 2). Horseshoe is an Indiana limited liability company that owns and operates a casino in Hammond, Indiana. (*Id*. at ¶ 3). Horseshoe is a citizen of Delaware and Nevada and has its principal place of business in Nevada. (Dkt. 13 at 6; Dkt. 9).[1] On its website, Horseshoe advertises

---

[1] Horseshoe Hammond, LLC has one member, Horseshoe Gaming Holding, LLC, which has one member, CEOC, LLC, which has one member, Caesars Resort Collection, LLC, which has one member, Caesars Growth Partners, LLC, which has one member, Caesars Holdings, Inc., which has one shareholder, Caesars Entertainment Inc. (Dkt. 9). Both Caesars Holdings and Caesars Entertainment are Delaware corporations, and their principal place of business

1

the casino's proximity to Chicago. (Dkt. 16 at 5; Dkt. 16-1). Horseshoe's website also advertises a free shuttle service between the casino and "many locations through Chicago, including downtown hotels." (Dkt. 16 at 5; Dkt. 16-2).

Around November 8, 2020, Tagliere tripped over a raised electrical outlet while visiting Horseshoe's casino in Hammond, Indiana. (Dkt. 1 ¶¶ 6–7). Tagliere fell forward, hit her head on the ground, and briefly lost consciousness. (*Id*. at ¶¶ 7–8). Casino employees had left the electrical outlet raised for about thirty minutes after moving slot machines to a different area. (*Id.* at ¶¶ 7, 9). As a result of the fall, Tagliere injured her back. (*Id.* at ¶¶ 10–11). Tagliere sued Horseshoe, alleging negligence. (*Id.* at ¶¶ 12–17). Horseshoe now moves to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to the Northern District of Indiana. (Dkt. 13).

## LEGAL STANDARD

The plaintiff bears the burden of proving personal jurisdiction when challenged. *John Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018). If the defendant "submit[s] affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Where, as here, there has been no jurisdictional hearing, the plaintiff need only set forth a *prima facie* showing of jurisdiction. *Purdue*, 338 F.3d at 782. The Court reads "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to decide whether a *prima facie* case for personal jurisdiction exists. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006). Yet, the "court will accept as true any facts in

---

is Nevada. (*Id.*) For purposes of diversity jurisdiction, an LLC has the citizenship of its members. *Qin v. Deslongchamps*, 31 F.4th 576, 582 (7th Cir. 2022).

the defendant['s] affidavits that do not conflict with anything in the record, either by way of [the] complaint or other submissions." *Curry v. Revolution Lab'ys*, 949 F.3d 385, 393 (7th Cir. 2020).

## DISCUSSION

### I.  Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); Fed. R. Civ. P. 4(k)(1)(A). Illinois's long-arm statute grants jurisdiction over nonresidents coextensive with the federal standard for due process. 735 ILCS 5/2-209(c); *John Crane*, 891 F.3d at 695. Under the Fourteenth Amendment, due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). For this Court to exercise personal jurisdiction, a nonresident defendant must have "minimum contacts" with Illinois "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (cleaned up).

Personal jurisdiction can be general or specific. *Rogers v. City of Hobart*, 996 F.3d 812, 818 (7th Cir. 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). "General jurisdiction permits a defendant to be sued in a particular forum for any claim, regardless of whether the claim has any connection to the forum state." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) (internal citation omitted). Specific jurisdiction, however, is claim-dependent: it "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. (quoting *Goodyear*, 564 U.S. at 919) (cleaned up). Opposing Horseshoe's jurisdictional challenge, Tagliere asks the

3

Court to exercise general jurisdiction. (Dkt. 16 at 2–5). She does not attempt to establish specific jurisdiction, presumably because all of Horseshoe's alleged conduct underlying this suit occurred in Indiana. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state.").

A court can exercise general jurisdiction over an out-of-state defendant if the defendant's contacts with the forum state are "so continuous and systematic as to render it essentially at home there." *J.S.T. Corp.*, 965 F.3d at 575 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (cleaned up). Since general jurisdiction extends to "conduct entirely unrelated to the forum state, . . . it should not lightly be found." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015). There are two "exemplar bases" where an organization is "essentially at home" for general-jurisdiction purposes: its state of incorporation and principal place of business. *Daimler*, 571 U.S. at 137; *Kipp*, 783 F.3d at 698. Neither applies here. Horseshoe is an Indiana LLC with its principal place of business in Nevada.

Nonetheless, Tagliere insists that general jurisdiction is proper due to Horseshoe's "continuous and systematic business" in Illinois. (Dkt. 16 at 3–5). She leans on case law predating the Supreme Court's decisions in *Daimler* and *Goodyear*. (*Id.*)[2] But those more recent decisions "raised the bar" for general jurisdiction. *Kipp*, 783 F.3d at 698; *see Daimler*, 571 U.S. at 138–39 ("[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be

---

[2] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding general jurisdiction in Texas improper where a Colombian corporation's contacts with the forum "consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting . . . checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Fort Worth company] for substantial sums; and sending personnel to . . . Fort Worth for training"); *McKia-Coy v. Horseshoe Hammond, LLC*, 2008 WL 4326468, at *5 (N.D. Ill. Sept. 17, 2008) (exercising general jurisdiction where the casino advertised to Illinois consumers and provided free transport between Illinois and Indiana); *Adams ex. Rel. Adams v. Harrah's Md. Heights Corp.*, 789 N.E.2d 436, 439 (Ill. App. Ct. 2003) (similar). Neither *McKia-Coy* nor *Adams* is binding on this Court. To the extent these cases are out of step with current Supreme Court and Seventh Circuit precedent, they are unpersuasive.

said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." (quoting *Goodyear*, 564 U.S. at 919)) (cleaned up).

In *Kipp*, the Seventh Circuit made clear that soliciting business in Illinois is not enough to support general jurisdiction—not even close. 783 F.3d at 699. There, the defendant ski resort attended an annual trade show in Chicago, collected Illinois residents' email addresses for marketing, targeted Illinois customers with a "Chicagoland Express" vacation package, and allowed Illinois residents to reserve rooms on its website—efforts which attracted a "large number" of Illinois customers to its business. *Id.* at 698. Importantly, the ski resort's website was "mostly informative," it did not advertise in Illinois, and it had no Illinois office, employees, or business registration. *Id.* at 699. After emphasizing that "no case has ever held that solicitation alone is sufficient for general jurisdiction," the *Kipp* Court found the ski resort's solicitation to be "relatively slight." *Id.* Specifically, the "Chicagoland Express" package was not reserved for Illinois residents, and it spoke to potential Illinois customers "only once a year." *Id.* Although Illinois customers made up a substantial percentage of the ski resort's business, it was "unclear" whether that business stemmed from targeted solicitation or was "simply a result of the close proximity of Illinois to the resort and the high population density of Chicago." *Id.* Thus, the ski resort's contacts with Illinois were "inconsistent and perhaps even sporadic." *Id.*

Here, as in *Kipp*, Horseshoe is not at home in Illinois. Without more, soliciting business in Illinois is insufficient. *See, e.g.*, *Ruddy v. Wilmot Mountain, Inc.*, 2011 WL 3584418, at *3 (N.D. Ill. Aug. 12, 2011) ("Illinois courts consistently reject mere solicitation of business as a basis for the exercise of general jurisdiction."). Horseshoe's efforts to attract Illinois customers resemble those which *Kipp* found lacking. *See Kipp*, 783 F.3d at 699. The casino's website is accessible to

5

the general public and is "mostly informative": it merely advertises the casino's proximity to Chicago and its free shuttle service. *See id.*; *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (operating a public website accessible to Illinois residents does not support general jurisdiction); *see also, e.g.*, *Congdon v. Cheapcaribbean.com, Inc.*, 2017 WL 5069960, at *7 (N.D. Ill. Nov. 3, 2017) (collecting cases). Apart from Horseshoe's website, Tagliere does not point to any other advertising targeting Illinois residents. Moreover, the record does not show that Illinois residents make up a meaningful percentage of the casino's business—let alone that Horseshoe's solicitation efforts in Illinois contribute to that business. *See Kipp*, 783 F.3d at 699; *Daimler*, 571 U.S. at 119 (explaining that general jurisdiction is not available in every state where a corporation has "sizable" sales); *cf. Nicholson v. E-Telequote Ins., Inc.*, 2015 WL 5950659, at *4 (N.D. Ill. Oct. 13, 2015) ("[D]oing 10 percent of your business in Illinois does not make a corporation 'at home' in Illinois.").

Horseshoe's shuttle service is not even exclusive to Illinois residents. *See Kipp*, 783 F.3d at 699. Considering the shuttle stops include downtown hotels, the service may attract many nonresident Chicago tourists. Even if Horseshoe shuttles a substantial number of Illinois residents to its casino, passing through Illinois does not make Horseshoe "at home" in the state. *See, e.g.*, *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 405–06 (2017) (holding general jurisdiction improper as to a railroad with over 2,000 miles of train tracks and over 2,000 employees in the forum state); *Hayward v. Taylor Truck Line, Inc.*, 2015 WL 5444787, at *6 (N.D. Ill. Sept. 14, 2015) ("Travel through Illinois en route to other states to conduct business does not render [the defendant] 'essentially at home' in Illinois."). Nor does Tagliere allege that Horseshoe has any offices, employees, or business registration in Illinois. *See Kipp*, 783 F.3d at 699. Although *Goodyear* and *Daimler* left open the possibility of exercising general jurisdiction beyond a state of incorporation

6

or principal place of business, this not such an "exceptional case." *See Daimler*, 571 U.S. at 139 n.19; *Kipp*, 783 F.3d at 699. Tagliere has therefore failed to make a *prima facie* showing of personal jurisdiction.

## II. Venue

Horseshoe also moves to dismiss for improper venue, or in the alternative, to transfer to the Northern District of Indiana. (Dkt. 13 at 7–8). While the plaintiff has the burden to show the current forum is proper, the burden is low. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 810 (7th Cir. 2016). Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

None of the § 1391(b) prongs are met here. Horseshoe is a resident of other jurisdictions and is not subject to this Court's personal jurisdiction. Moreover, the alleged negligent conduct giving rise to Tagliere's injuries occurred outside of this District. Venue is therefore improper.

Where venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such a case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). Under § 1406, "transfer is ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is 'time consuming' and may be 'justice-defeating.'" *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1059–60 (N.D. Ill. 2002) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)). Since Horseshoe consents to suit in the Northern District of

Indiana, (Dkt. 13 at 8; Dkt. 16 at 7), rather than dismiss Tagliere's case and require her to refile, the Court will transfer in the interest of justice.

## **CONCLUSION**

Because the Court lacks personal jurisdiction, and venue is improper, the Court grants Horseshoe's motion to transfer venue [13] and directs the Clerk to transfer the case to the Northern District of Indiana forthwith under 28 U.S.C. § 1406(a) for all further proceedings.

_____
Virginia M. Kendall
United States District Judge

Date: June 8, 2023

8